UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MICHAEL VENGHAUS and   :
ROBERT EMONDS,    :
    Plaintiffs    :
            :
v.           :  No. 3:06cv01452 (DJS)
            :
CITY OF HARTFORD, PATRICK :
J. HARNETT and NATHANIEL L. :
ORTIZ,       :
    Defendants   :

MEMORANDUM OF DECISION AND ORDER

The Plaintiffs, Michael Venghaus ("Venghaus") and Robert Emonds ("Emonds"), bring

this action against the Defendants, the City of Hartford ("the City"), Patrick J. Harnett ("Harnett")

and Nathaniel L. Ortiz ("Ortiz"), alleging that the Defendants violated the Plaintiffs' rights under

the United States Constitution, the Connecticut Constitution, and the laws of the State of

Connecticut. Specifically, the Plaintiffs allege that the Defendant Ortiz violated their

constitutional rights by falsely arresting them, maliciously prosecuting them[1], conducting an

unlawful search and seizure, and depriving them of their property interests without due process

of law, and that the Defendant Harnett was personally involved in these constitutional violations.

The Plaintiffs further allege that the City is liable for policies and customs leading to

---

[1]In Count One of their complaint, the Plaintiffs allege that certain actions taken by the
Defendants "constituted malicious prosecution" in violation of the United States Constitution and
the Connecticut Constitution. (Complaint, Count One, ¶ 14.) Although the Defendants contend
that "[s]ummary judgment should enter in favor [of the Defendants] on all counts of the
Complaint," (dkt. # 40-2, p. 1), the Defendants fail to brief the malicious prosecution claim. "In
fact, neither party briefs the issue . . . . The court will not resolve an issue in a motion for
summary judgment that has not been briefed by either party. . . . For this reason, the court denies
defendant[s'] motion with respect to the [malicious prosecution] claim." *Caravel/Woodwind
Charters, Inc. v. Tahoe Keys Marina, LLC*, 438 F. Supp. 2d 1174, 1180 n. 4 (E.D. Cal. 2006).

constitutional deprivations. The Plaintiffs also allege the following state common law claims against the Defendant Ortiz: intentional infliction of emotional distress, negligent infliction of emotional distress, and assault. The Defendants have filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons that hereafter follow, the Defendants' motion for summary judgment (**dkt. # 40**) is **GRANTED in part** and **DENIED in part**.

I. FACTS

At all times relevant to this case, the individual Defendants were members of the City's Police Department. Patrick J. Harnett was employed as the Chief of Police by the City of Hartford. Nathaniel L. Ortiz was a police officer.

On August 17, 2004, members of the Vice and Narcotics Division of the Hartford Police Department, including the Defendant Ortiz, were conducting a reverse sting drug operation[2] at 8-10 Center Street in Hartford. The area was known to police as a high-crime area, with a history of drug and gun violence. During the operation, the Defendant Ortiz was carrying his department-issued handgun.

On August 17, 2004, the Plaintiffs, Michael Venghaus and Robert Emonds, along with a co-worker, Charles Clarke ("Clarke"), were at a job site in Windsor, Connecticut. These men had been hired by a homeowner to dismantle and remove a garage on her property. At approximately 12:00 noon on August 17, 2004, Clarke's girlfriend, Tiffany Sterling ("Sterling"), was arrested at the 8-10 Center Street reverse sting drug operation in Hartford for Criminal Attempt to Possess Narcotics. At the time of Sterling's arrest, the police took her cell phone and did not return it to her. While at the job site in Windsor that day, Clarke received a number of phone calls on his cell

_____

[2]A reverse sting drug operation targets drug buyers rather than drug sellers.

phone concerning Sterling. Clarke became upset as a result of these phone calls and asked the caller to put Sterling on the phone. Venghaus took Clarke's phone and also spoke to the same unidentified male caller. The person Venghaus spoke to told him that Sterling was near him and was performing sexual favors in exchange for drugs.

The same caller urged the Plaintiffs to follow his directions so they might bring Sterling to safety. While the Plaintiffs were driving in Venghaus' truck, the caller relayed directions to Sterling's alleged whereabouts, specifically, 8-10 Center Street in Hartford. When the Plaintiffs arrived at the 8-10 Center Street location, they saw a man wearing a "Derek Jeter" shirt talking on a cell phone. This man identified himself as the caller. According to Venghaus, the man wearing the Derek Jeter shirt subsequently identified himself by the name "Ortiz." The Defendants maintain that the man in the Derek Jeter shirt was not the Defendant Ortiz, but another police officer, Detective Rivera. Because the Court must "view[] the record in the light most favorable to the party against whom summary judgment is sought," *In re Novartis Wage & Hour Litigation*, 611 F.3d 141, 150 (2d Cir. 2010), the Court accepts as true the facts presented by the Plaintiffs for purposes of determining the pending motion.

While Emonds parked Venghaus' vehicle as requested by the caller, officers posing as drug dealers and wearing street clothes approached the vehicle and urged the Plaintiffs to give them money for drugs, saying that they had "good shit" to sell. (Dkt. # 48-3, p. 50.) The Plaintiffs repeatedly asked about Sterling, but were told she was inside the building at that location and that "[n]o money, no girl." (Dkt. # 48-7, p. 26.) Venghaus "finally agreed to give $40 for 'good shit' if he'd bring out the girl." (Dkt. # 48-4, p. 28.) At that point, guns were drawn and pointed at the Plaintiffs' heads. The Plaintiffs were then pulled out of the vehicle, handcuffed, and placed under

arrest for Criminal Attempt to Possess Narcotics.

As the Plaintiffs were being taken into police custody, one or more police officers "made a quick look around the vehicle for whatever reason, under the seats, on the seats and the dash and stuff like that . . . ." (Dkt. # 48-8, p. 11.) An unidentified individual, believed by the Plaintiffs to be a police officer, then drove away in Venghaus' truck. The keys to Venghaus' truck were returned to him while the Plaintiffs were in police custody. Seven hours later, the Plaintiffs returned to the location of their arrest. Venghaus' truck was not at that location. The Plaintiffs subsequently found the truck on Winter Street in Hartford, "down around one of the corners" from the site of the arrests. (Dkt. # 48-4, p. 11.) The truck had been vandalized and Venghaus' work tools and other personal effects had been stolen.

On August 18, 2004,Venghaus filed a Citizen Complaint with the Hartford Police Department against "Nathaniel Ortiz [and] Arresting Officers" relating to the events of August 17, 2004. (Dkt. # 48-14, p. 13.) In connection with the filing of that complaint, "one of the [police] officers gave [Venghaus] the name Nathaniel Ortiz to put down[.]" (Dkt. # 48-4, p. 25.) As to the arrest of Venghaus on August 17, 2004, certain records of the Hartford Police Department identify Nathaniel Ortiz as the arresting officer. The Hartford Police Department investigated Venghaus' complaint. In a report dated November 12, 2004, the Internal Affairs Division of the Hartford Police Department "conclude[d] that the allegations against Detective Nathaniel Ortiz cannot be proven by a preponderance of the evidence." (Dkt. # 48-14, p. 47.)

## II. DISCUSSION

The Defendants move for summary judgment arguing that as a matter of law: (1) Ortiz is entitled to qualified immunity with regard to the federal claims; (2) there was insufficient

personal involvement by Ortiz to establish false arrest; (3) the dispositions of the criminal prosecutions of the Plaintiffs nullify any false arrest claims; (4) there was sufficient probable cause to support the arrests of the Plaintiffs; (5) there was no search of Venghaus' vehicle; (6) because there was a lawful arrest based on probable cause, any search of Venghaus' vehicle would have been permissible; (7) Venghaus' claim of deprivation of property without due process of law fails for lack of state action; (8) Venghaus' claim of deprivation of property without due process of law fails because he did not have a right to have his vehicle towed after his arrest; (9) Harnett is entitled to qualified immunity because his actions were objectively reasonable; (10) the Plaintiffs have failed to produce admissible evidence to support a claim that the Defendants had an official custom requiring or permitting persons to be arrested without probable cause, allowing illegal searches, or denying due process rights; (11) the Plaintiffs have failed to produce admissible evidence to support a claim of deliberate indifference; (12) the Plaintiffs have failed to produce admissible evidence to support a claim of inadequate training or negligent supervision; (13) the Plaintiffs have failed to produce admissible evidence to support a claim that Ortiz assaulted the Plaintiffs; (14) the Plaintiffs have failed to produce admissible evidence to support a claim that Ortiz negligently or intentionally inflicted emotional distress; (15) the official capacity claims should be dismissed; and (16) the Connecticut constitutional claims should be dismissed.

## A. SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted "if the movant show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a). Summary judgment is appropriate if, after discovery, "the nonmoving

party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'" *American International Group, Inc. v. London American International Corp.*, 664 F.2d 348, 351 (2d Cir. 1981) (quoting *Heyman v. Commerce & Industry Insurance Co.*, 524 F.2d 1317, 1319-20 (2d Cir. 1975)). While the nonmoving party may not rest upon mere conclusory allegations or denials to defeat a summary judgment motion, "[s]ummary judgment is inappropriate when the admissible materials produced in opposition to the summary judgment motion make it arguable that the claim has merit." *In re Dana Corp.*, 574 F.3d 129, 151 (2d Cir. 2009)(internal quotation marks omitted).

A dispute concerning a material fact is genuine"'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Aldrich v. Randolph Central School District*, 963 F.2d 520, 523 (2d Cir. 1992)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.'" *Birdsall v. City of Hartford*, 249 F. Supp. 2d 163, 169 (D. Conn. 2003)(quoting *Anderson*, 477 U.S. at 248). The Court must view all reasonable inferences and ambiguities in a light most favorable to the nonmoving party. *See Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Id.*

B. FEDERAL CLAIMS UNDER 42 U.S.C. § 1983

1. FALSE ARREST

i. Standard for § 1983 False Arrest Claim

A § 1983 claim for false arrest is based on the Fourth Amendment "right of an individual to be free from unreasonable seizures, including arrest without probable cause . . . ." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." *Id.* (internal quotation marks and citation omitted). When addressing constitutional claims alleging false arrest, courts generally look to the law of the state where the arrest occurred. *Russo v. City of Bridgeport*, 479 F.3d 196, 203 (2d Cir. 2007). "In a false arrest action, Connecticut places the burden of proving an unlawful arrest on the plaintiff." *Id.*

ii. Probable Cause

Probable cause for an arrest exists when an officer has "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotation marks omitted). Courts look to the totality of the circumstances and whether the events leading up to the arrest, "viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (internal quotation marks omitted). "Probable cause does not require absolute certainty." *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003). "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the

pertinent events and the knowledge of the officers, or may require a trial if the facts are in dispute." *Weyant*, 101 F.3d at 852 (citations omitted).

The Defendants offer as their main support for the existence of probable cause the fact that the Plaintiffs had driven to a part of town known for its drug trade. Once there, after talking to an undercover police officer, Plaintiffs "finally agreed to give $40 for 'good shit' if [the officer would] bring out the girl." (Dkt. # 48-4, p. 28.) Although the Plaintiffs were charged with criminal attempt to possess narcotics based on their conduct, the Plaintiffs argue that this Court should examine the totality of the circumstances leading up to the arrests. Viewed in the light most favorable to the nonmoving parties, i.e., the Plaintiffs, the facts indicate that the Plaintiffs were lured to an unfamiliar part of town by the police under false pretenses. The police gave the Plaintiffs explicit directions to a destination. When the Plaintiffs arrived at that destination, several men surrounded their vehicle, repeatedly offered to sell them drugs, and ignored the Plaintiffs' repeated requests to bring Sterling out of the building. The question is whether there was probable cause to arrest the Plaintiffs based on Venghaus' statement agreeing to give $40 to one of the undercover police officers, taking into account the totality of the circumstances leading up to the arrest, particularly Venghaus' contention that his offer to give the undercover officer $40 related to his desire to have Sterling brought out of the building as opposed to a wish to purchase drugs: "[A]s I said, I would have done anything for him to bring out the girl. He was saying that I spent money to buy good shit, I'm saying I spent money to get the girl." (*Id.*)  There clearly is a dispute as to the pertinent events that led up to the arrests and that dispute raises a question as to the reasonableness of the arrests. "Viewing the facts in the light most favorable to the plaintiff[s], as the court must in deciding a summary judgment motion, the court finds that

there is a genuine issue of material fact as to whether defendants lacked probable cause to arrest plaintiff[s]." *Anderson v. City of New York*, No. 06-CV-5363 (KAM) (VVP), 2011 U.S. Dist. LEXIS 106619, at *16 (E.D.N.Y. Sept. 20, 2011). Consequently the Defendants are not entitled to summary judgment on the basis of probable cause for the arrests of the Plaintiffs.

    iii.  Personal Involvement

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)(internal quotation marks omitted). A defendant may be liable if he directly participated in the alleged constitutional deprivation or participated in the alleged constitutional deprivation "in a manner that might be said to be 'indirect' - - such as ordering or helping others to do the unlawful acts, rather than doing them him - or herself." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001).  Liability on the basis of direct participation "requires intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." *Id.*  "Since personal involvement is a question of fact . . . summary judgment may be granted only if no issues of material fact exist and the defendant is entitled to judgment as a matter of law." *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986).

The question of direct participation by the Defendant Ortiz in the arrests of the Plaintiffs gives rise to a factual dispute. The Defendants contend that the Plaintiffs cannot establish that Ortiz directly participated in their arrests. The Plaintiffs counter that there is substantial evidence in the record to demonstrate the direct participation of Ortiz in their arrests. The Plaintiffs rely in part on the Hartford Police Department Arrest Register, which designates "N. Ortiz" as the

arresting officer (dkt. # 48-14, p. 20), and the Hartford Police Department Detailed Arrest Inquiry which likewise identifies the arresting officer as "Ortiz, Nathaniel." (Dkt. # 48-14, p. 18.)  The Plaintiffs further allege that Ortiz was the man wearing the Derek Jeter shirt who had spoken to the Plaintiffs on the phone and who apprehended Venghaus. Because there is a genuine dispute as to the participation of Ortiz in the arrests of the Plaintiffs, Ortiz is not entitled to summary judgment based on a claimed lack of personal involvement in the arrests.

iv. Disposition of Criminal Cases

"It is well settled in the Second Circuit that in order to prevail on a cause of action for false arrest or malicious prosecution, a plaintiff must prove that the underlying criminal proceeding terminated in his favor." *Birdsall v. City of Hartford*, 249 F. Supp.2d 163, 171 (D. Conn. 2003). In this case, each Plaintiff's underlying criminal proceeding terminated in a nolle prosequi. Under Connecticut law, the question of whether a nolle constitutes a favorable termination is unsettled. *See Russo v. City of Bridgeport*, 479 F.3d 196, 204 n. 9 (2d Cir. 2007). The Defendants cite *Birdsall* in support of their argument that a nolle is not a favorable termination. In *Birdsall*, however, the charges were nolled "based upon a representation that Birdsall would be making a charitable contribution." *Birdsall*, 249 F. Supp. 2d at 168. In *Roberts v. Babkiewicz*, 582 F.3d 418, 421 (2d Cir. 2009), the Second Circuit found that "[t]he majority of cases from Connecticut courts interpret Connecticut law as that a nolle prosequi satisfies the 'favorable termination' element as long as the abandonment of the prosecution was not based on an arrangement with the defendant." However, the mere allegation of a nolle is insufficient to prove a favorable termination. At the summary judgment stage, the plaintiff must present some evidence of "'circumstances amounting to an abandonment of the prosecution without request

-10-

from or by arrangement with him.'" *Holman v. Cascio*, 390 F. Supp. 2d 120, 123, 124 (D. Conn. 2005) (quoting *See v. Gosselin*, 133 Conn. 158, 160 (1946)).

This Court agrees that an unconditional nolle does not bar a subsequent claim of false arrest or malicious prosecution. While neither the Plaintiffs nor the Defendants cite any facts in their briefs regarding the entry of the nolles, the deposition testimony of Venghaus contains the following exchange:

> Q:    Okay. And the case arising out of the August 17, 2004 events in Hartford, I believe you said those were nolled, correct?
>
> A:    Yeah, I believe that nolled is the term.
>
> Q:    Did you go to court on those?
>
> A:    Absolutely.
>
> Q:    And what happened when you went there?
>
> A:    I think first was a continuance and then was a dismissal or nolle, nolled, whatever. It was because of the officer, they said it in court.
>
> Q:    Okay, what did they say?
>
> A:    Because of the officer it's going to be nolled or dismissed.
>
> Q:    Nolle and dismissal are two different things in the way of lawyer way of thinking things. Did they say that you had to stay clean for 15 months or so, or did they say it was dismissed and - -
>
> A:    You know what, I'm sorry, I don't recall. I just remember leaving and not having to worry about it.

(Dkt. # 48-4, pp. 45-46.)

Although it is a close question, the Court concludes that the Plaintiff's testimony that the prosecution did not proceed "because of the officer," and the Plaintiff's indication that he did not

-11-

have to do anything in exchange for the entry of a nolle is sufficient to withstand the Defendants'

motion for summary judgment. *See Lupinacci v. Pizighelli*, 588 F. Supp. 2d 242, 249 (D. Conn.

2008) (the court concluded that the plaintiff had not received a nolle in his criminal case in

exchange for providing a benefit to the state based on the plaintiff's deposition testimony "that

the prosecutor declared him an 'innocent bystander,' and that he did not have to pay any fine or

perform community service as a condition of the nolle" ); *see also Cislo v. Pitman*, CV

91036193, 1997 Conn. Super. LEXIS 1313, at *2-4  (Conn. Super. Ct. May 15, 1997) (a nolle

that appeared to have been entered because the complaining party did not appear in court could

be considered a favorable disposition permitting a subsequent federal civil rights claim). Taking

the facts in the light most favorable to the nonmoving party, "[t]he plaintiff has created a genuine

issue of material fact whether his case was favorably terminated, one that a trier of fact must

resolve." *Holman*, 390 F. Supp. 2d at 125. For that reason, the Defendants are not entitled to

summary judgment on the basis of the disposition of the criminal charges against the Plaintiffs.

Because the Plaintiffs have demonstrated that there are genuine issues of material fact as

to probable cause for their arrests, personal involvement by Ortiz, and whether their criminal

cases were favorably terminated, summary judgment is denied as to Count One of the Complaint.

## 2. UNLAWFUL SEARCH

The Fourth Amendment provides that "[t]he right of the people to be secure in their

persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be

violated . . . ."  U.S. Const. amend IV. The Defendants allege that the officer who drove

Venghaus' vehicle looked through the vehicle before driving it to a nearby location and that this

does not amount to a search. The Defendants rely on *Davis v. Rodriguez*, 364 F.3d 424, 435 (2d

Cir. 2004), where the court found that "[a]lthough the boundaries of what is and what is not a search are not always clear, it is axiomatic that a plaintiff alleging an unreasonable search must produce some evidence that a search has actually taken place." Conversely, the Plaintiffs allege that after they were pulled out of the vehicle,  officers "looked through everything," and Venghaus "remember[s] seeing people in the truck" while being walked away from the vehicle. (Dkt. # 48-4, pp. 57, 58.) Emonds testified at his deposition that "he [an unidentified police officer] took us out [of Venghaus' vehicle], made a quick look around the vehicle for whatever reason, under the seats, on the seats and the dash and stuff like that as I was going by." (Dkt. # 48-8, p. 11.)   The Court concludes that these factual assertions are sufficient to create a genuine dispute as to whether a search occurred.

The Defendants further argue that even if there had been a search, such search was permissible because it was incidental to a lawful arrest and was for the purpose of locating weapons. The Court recognizes that "circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Arizona v. Gant*,  556 U.S. 332, 343 (2009) (internal quotation marks omitted). Additionally, police may search a vehicle incident to a lawful arrest "when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Id*. The Court has already concluded that there is a genuine dispute of material fact as to whether there was probable cause for the arrests of the Plaintiffs. That dispute precludes summary judgment on the basis of a warrantless search of a vehicle authorized as an incident of arrest.

The Defendants note further, however, that while the Plaintiffs allege in their complaint

that "pertinent acts and omissions of the defendant officer, Nathaniel L. Ortiz, in regard to the search of the vehicle of the plaintiff, Michael Venghaus, . . . deprived the plaintiffs of their right to be free of unreasonable and unlawful searches . . ." (Complaint, Count Five, ¶ 13), the complaint contains no factual allegations, nor have the plaintiffs provided any evidence, that would support a claim that Ortiz was personally involved in the alleged search. "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) (internal quotation marks omitted).  Because the Plaintiffs have not presented evidence to establish a genuine factual dispute as to the personal involvement of Ortiz in the alleged search, the Defendant Ortiz is entitled to summary judgment as to Count Five of the complaint.

### 3. DUE PROCESS CLAIMS

Count Two of the complaint asserts a due process claim based on the alleged unlawful deprivation of the vehicle, tools, and personalty belonging to Venghaus. In their response to the Defendants' summary judgment motion, the Plaintiffs also argue a liberty interest substantive due process claim based on the assertion that they were "deliberately and maliciously lur[ed] . . . away from their job site and into a 'hot spot' area of Hartford with which they were unfamiliar . . . ." (Dkt. # 47, p. 30.) In their reply brief, the Defendants point out that the Plaintiffs did not assert a liberty interest due process claim in their complaint and that the Defendants would have conducted discovery concerning a liberty interest claim if they had been on notice of such a claim.

The Court agrees with the Defendants that the Plaintiffs did not properly plead a substantive due process violation based on a deprivation of a liberty interest. "[A] plaintiff may

not use a memorandum of law or similar paper to assert a claim that is not contained in the complaint." *Ribis v. Mike Barnard Chevrolet-Cadillac, Inc.*, 468 F. Supp. 2d 489, 495 (W.D.N.Y. 2007); *see also Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."). The Court concludes that a liberty interest substantive due process claim is not properly before the Court.

Even if the Plaintiffs had properly raised a substantive due process claim based on a liberty interest, such a claim would not survive the Defendants' motion for summary judgment. As to any claim based on an allegation of being lured to a site in Hartford, the Supreme Court "has always been reluctant to expand the concept of substantive due process because the guideposts for responsible decisionmaking in this uncharted area are scarce and open-ended. The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright v. Oliver*, 510 U.S. 266, 271-72 (1994) (internal quotation marks omitted). Additionally, "a substantive due process claim requires more: To trigger liability, a police officer's action must 'shock the conscience.'" *Russo v. City of Bridgeport*, 479 F.3d 196, 209-10 (2d Cir. 2007) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). Because it is not uncommon that in the course of undercover police operations potential criminals are "lured" or "set up," the conduct of the Defendants as alleged by the Plaintiffs does not shock the conscience in the constitutional sense. "[T]ime has shown that the judicial conscience is sturdy. There are very few cases in which this demanding standard has been met . . . ." *Labensky v County of Nassau*, 6 F. Supp. 2d 161, 171 (E.D.N.Y. 1998) (an undercover operation during which a police informant befriended and convinced a

defendant to obtain cocaine for him did not violate substantive due process).  As to any claim

relating to the Plaintiffs' arrests, "'claims arising before or during arrest are to be analyzed

exclusively under the fourth amendment's reasonableness standard rather than the substantive due

process standard . . . .'" *Russo*, 479 F.3d at 209  (quoting *Fontana v. Haskin*, 262 F.3d 871, 881

(9th Cir. 2001)).

      The Plaintiff Venghaus further claims that he was deprived of a property interest in

violation of his substantive due process rights because after his arrest, his vehicle, which was left

by the police in the area where the Plaintiffs were arrested, was vandalized and personal effects

were stolen from it. In opposing the Defendants' motion for summary judgment, the Plaintiffs

assert that "the plaintiff, Michael Venghaus, suffered an unlawful and unreasonable seizure and

deprivation of his vehicle and its contents in violation of his Fourth Amendment rights." (Dkt. #

47, p. 25.)  "'Substantive due process analysis is . . . inappropriate . . . if [the] claim is 'covered

by' the Fourth Amendment.'" *Tenenbaum v. Williams*, 193 F.3d 581, 600 (2d Cir. 1999) (quoting

*County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998)); *see also Bryant v. Ward*, Civ. No.

3:09CV981 (AWT), 2011 U.S. Dist. LEXIS 77345, at *20 (D. Conn. July 18, 2011) ("the seizure

of the plaintiff's license and automobile [within the meaning of the Fourth Amendment] cannot

form the basis for a substantive due process claim"). The Plaintiff Venghaus' assertion that the

deprivation of his vehicle and its contents is 'covered by' the Fourth Amendment undercuts his

substantive due process claim.

      As previously noted, "personal involvement of defendants in alleged constitutional

deprivations is a prerequisite to an award of damages under § 1983." *Farid*, 593 F.3d at 249

(internal quotation marks omitted).  The Plaintiffs have not provided any evidence that would

support a claim that either Ortiz or Harnett was personally involved in the alleged seizure and deprivation of the vehicle and its contents. Under either a Fourth Amendment seizure or substantive due process analysis, the Plaintiffs have not presented evidence to establish a genuine factual dispute as to the personal involvement of Ortiz or Harnett in the alleged seizure and deprivation of Venghaus' vehicle and its contents. Additionally, the allegations that the police did not tow Venghaus' vehicle, but instead drove it to a nearby location and returned the keys to Vennghaus, do not shock the conscience in the constitutional sense. Accordingly, the Defendants are entitled to summary judgment as to Count Two of the complaint.

### 4. QUALIFIED IMMUNITY FOR ORTIZ

"[G]overnment officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "'In determining whether a particular right was clearly established at the time defendants acted, [the Second Circuit] has considered three factors: (1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.'" *Yorzinski v. Alves*, 477 F. Supp. 2d 461, 469-70 (D. Conn. 2007) (quoting *Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir. 1991)).

"There is no question that the right[] at issue in this case - - to be free from false arrest  . . . [was] clearly established at the time of the incident." *Lennon v. Miller*, 66 F.3d 416, 423 (2d

Cir. 1995). The Defendants argue that the arrests of the Plaintiffs were objectively reasonable because officers of reasonable competence could disagree over whether Ortiz had probable cause to arrest the Plaintiffs after Venghaus agreed to give one of the officers $ 40 for drugs. The Court has already concluded that there is a legitimate dispute as to the pertinent events leading up to the arrests of the Plaintiffs and, for that reason, the objective reasonableness of those arrests remains unresolved. Consequently, qualified immunity is unavailable to Ortiz through the Defendants' summary judgment motion.

### 5. MUNICIPAL LIABILITY

Under *Monell v. New York City Department of Social Services*, 436 U.S. 658, 690 (1978), a municipality can be held liable under §1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Municipalities "may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 690-91. However, " a municipality cannot be held liable *solely* because it employs a tortfeasor - - or, in other words, a municipality cannot be held liable under §1983 on a *respondeat superior* theory." *Id.* at 691. Instead, a plaintiff must show that an official policy or custom was the cause of the constitutional deprivation. *See Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985).

The element of causation has two components. "First, the plaintiff must predicate his recovery on some particular action taken by the city, as opposed to an action taken unilaterally by a nonpolicymaking municipal employee." *Oklahoma City v. Tuttle*, 471 U.S. 808, 829 (1985).

-18-

This is to show that the municipality took some action that caused the plaintiff's injury "beyond merely employing the misbehaving officer." *Vippolis*, 768 F.2d at 44. Second, to show that it was the municipal policy that caused a deprivation of his constitutional rights, the plaintiff must "establish a causal connection . . . between the policy and the deprivation of his constitutional rights." *Id.*

To establish a "policy" in an instance where an alleged constitutional violation was committed by a subordinate municipal employee, a plaintiff must demonstrate "that a policymaker ordered or ratified the subordinates' actions" or "that the policymaker was aware of a subordinate's unconstitutional actions, and consciously chose to ignore them, effectively ratifying the actions." *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 126 (2d Cir. 2004). In order to establish liability under *Monell*, proof of a single constitutional violation is insufficient, "unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Tuttle*, 471 U.S. at 824. However, where the policy itself is not unconstitutional, "considerably more proof than the single incident will be necessary in every case" to establish liability. *Id.* At the same time,"[w]here a city's official policy is constitutional, but the city causes its employees to apply it unconstitutionally, such that the unconstitutional application might itself be considered municipal policy, the city may be held liable for its employees' unconstitutional acts." *Amnesty America*, 361 F.3d at 125. Additionally, "where a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a 'deliberate choice,' that acquiescence may 'be properly thought of as a city policy or custom that is actionable under §1983.'" *Id.* at 126 (quoting *City of Canton v. Harris*, 489 U.S. 378, 389

(1989)).

Here the Plaintiffs allege that the City of Hartford had policies, practices, and customs that caused the alleged violations of the Plaintiffs' constitutional rights. Specifically, the Plaintiffs assert that the City of Hartford "failed adequately to train and/or supervise officers in the Hartford Police Department to such an extent that it amounts to deliberate indifference to the rights of citizens with whom they would frequently come into contact." (Dkt. # 47, p. 12.) The Plaintiffs assert (1) failure to train and supervise officers as to what constitutes a lawful narcotics investigation and arrest and (2) failure to train and supervise officers as to the proper manner to secure and safeguard citizens' property, including motor vehicles, at the time a citizen is arrested and taken into police custody. The Plaintiffs' theories of failure to train and failure to supervise will be discussed separately.

i. Failure to Train

"Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *City of Canton*, 489 U.S. at 389. To establish deliberate indifference, a plaintiff must show that: (1)" a policymaker knows to a moral certainty that [city] employees will confront a given situation"; (2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992) (internal quotation marks omitted). "[I]t may happen that in light of the duties assigned to specific officers

or employees the need for more or different training is so obvious, and the inadequacy so likely to result in violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390.

"*City of Canton* requires that plaintiffs establish not only that the officials' purported failure to train occurred under circumstances that could constitute deliberate indifference, but also that plaintiffs identify a specific deficiency in the city's training program and establish that that deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation." *Amnesty America*, 361 F.3d at 129 (quoting *City of Canton*, 489 U.S. at 391)). Thus the Plaintiffs must demonstrate that the alleged constitutional violations were the result of a faulty training program rather than isolated misconduct by a single actor. *See id.* at 130.

The Plaintiffs rely on Ortiz' testimony concerning his training in narcotics investigations and arrests, and contend that the training provided to Ortiz at the Police Academy and the informal "on the job training" he received reflect a failure by official policymakers to properly train amounting to deliberate indifference. In essence the Plaintiffs argue that not providing training beyond that provided at the Police Academy constitutes a failure to train. The Plaintiffs do not, however, satisfy the requirements of *Walker*. The Plaintiffs do not clearly articulate the "particular situation" out of which the alleged constitutional violation arose; they simply argue that some additional training should have been provided. According to the facts set forth by the Plaintiffs, the constitutional violations arose out of Ortiz' conduct of luring the Plaintiffs to the scene and arresting them without probable cause. This in no way "prove[s] that the deprivation occurred as the result of a municipal policy rather than as a result of isolated misconduct by a

single actor . . . ." *Amnesty America*, 361 F.3d at 130.

In addition, the Plaintiffs do not provide any evidence of a specific deficiency in the City's training program or how such deficiency caused the alleged deprivation. The Plaintiffs cannot succeed on their failure to train claim "without any evidence as to . . . how better or different training could have prevented the conduct [they] complain[] of, or how a hypothetically well-trained officer would have acted under the circumstances." *Odom v. Matteo*, 772 F. Supp. 2d 377, 403 (D. Conn. 2011) (internal quotation marks omitted). To simply state that a training program is deficient is insufficient as a matter of law when unsupported by evidence. *See Amnesty America*, 361 F.3d at 130-31 (affirming summary judgment where plaintiffs failed to offer evidence of the purported inadequacies of the town's training program).

The Plaintiffs also allege a deficiency in the adequacy of the training of Hartford police officers as to proper safeguarding and securing of citizens' vehicles and personal items incident to arrest. In their brief opposing the motion for summary judgment, the Plaintiffs state that "there is no evidence in the record to suggest that the City of Hartford or the Hartford Police Department promulgated or disseminated to its officers any standard department policy with regard to the towing and/or impounding of citizens' motor vehicles at the time that citizens are taken into police custody." (Dkt. # 47, pp. 15-16.) Additionally, the Plaintiffs rely on the deposition testimony of Ortiz stating that he did not know whether there was a set policy about the towing of vehicles of citizens taken into police custody. Based on this information the Plaintiffs suggest that the Hartford police officers should have been trained as to the essential community caretaking function of safeguarding the property belonging to citizens taken into police custody.

In their reply brief in support of the motion for summary judgment, the Defendants refer to, and attach copies of, Hartford Police Department policies and procedures regarding "Police Towing of Motor Vehicles." (Dkt. # 49-2, pp. 4-19.) As reflected in these policies and procedures, and as represented to the Court by the Defendants, "the Hartford Police Department [does] maintain[] a policy regarding the towing of vehicles." (Dkt. # 49, p. 4.) The remaining evidence relied upon by the Plaintiffs to demonstrate a deficiency in training is the deposition testimony of Ortiz. That evidence, however, is insufficient to establish liability based on a claim of failure to train. "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *City of Canton*, 489 U.S. at 390-91. "After discovery . . . a plaintiff is expected to proffer evidence from which a reasonable factfinder could conclude that the training program was actually inadequate, and that the inadequacy was closely related to the violation." *Amnesty America,* 361 F.3d at 130 n. 10. The Plaintiffs have not demonstrated a deficiency in the City's training program, nor have they provided evidence as to how a hypothetically well-trained police officer would have exercised discretion differently under the circumstances. The Court concludes that the Defendants are entitled to summary judgment as to the Plaintiffs' claim that the City is liable for their alleged injuries on the basis of inadequate training.

ii. Failure to Supervise

The Plaintiffs also assert that the City has a policy of deliberate indifference in the supervision of its police officers in regard to (1) what constitutes a lawful narcotics investigation and arrest, and (2) the proper manner to secure personal property of arrested persons. The

-23-

Defendants respond that the Plaintiffs cannot demonstrate deliberate indifference by final policymakers.

Proving failure to supervise requires the Plaintiffs to "(1) establish [the City's] duty to act by proving [it] should have known [its] inadequate supervision was so likely to result in the alleged deprivations so as to constitute deliberate indifference under *Walker*; (2) identify obvious and severe deficiencies in the [City's] supervision that reflect a purposeful rather than negligent course of action; and (3) show a causal relationship between the failure to supervise and the alleged deprivations to plaintiffs." *Reynolds v. Giuliani*, 506 F.3d 183, 193 (2d Cir. 2007). In order to prove deliberate indifference, the Plaintiffs "must show that the need for more or better supervision to protect against constitutional violations was obvious," but that the City, acting through Chief Harnett, made "no meaningful attempt" to prevent unconstitutional conduct. *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995). "An obvious need may be demonstrated through proof of repeated complaints of civil rights violations." *Id.* With regard to supervision of police officers concerning what constitutes a lawful narcotics investigation and arrest, the Plaintiffs offer no evidence of repeated civil rights complaints.

"Deliberate indifference may also be shown through expert testimony that a practice condoned by the defendant municipality was contrary to the practice of most police departments and was particularly dangerous because it presented an unusually high risk that constitutional rights would be violated." *Id.* (internal quotation marks omitted). The Plaintiffs presented no evidence that any practice condoned by the City was contrary to the practice of most police departments or presented an unusually high risk that constitutional rights would be violated.

The Plaintiffs have likewise not shown deliberate indifference with regard to the City's

supervision of police officers as to the proper safeguarding of vehicles of persons taken into custody. Although the Plaintiffs allege that another vehicle was parked by the police during the reverse sting operation and subsequently vandalized, the owner of that vehicle made no formal complaint to the police. The City did in fact supervise Ortiz, as is evidenced by the internal affairs investigation conducted by the police department in response to Venghaus' complaint that his vehicle had been vandalized. At that time, the City had in place a written policy governing the procedure for towing the vehicles of arrested persons. Under that policy police officers were given discretion as to whether or not such a vehicle would be towed. Because this policy was in effect at the time of their arrests, the Plaintiffs' argument that the absence of a policy or custom demonstrates a failure to supervise regarding the towing of vehicles fails. The Plaintiffs have not established that the City was or should have been on notice that there was an obvious need for more or better supervision of the narcotics officers in order to avoid constitutional violations. Consequently, the Plaintiffs have not demonstrated deliberate indifference on the part of the City. Therefore, the Defendants are entitled to summary judgment as to Count Six of the complaint.

## 6. SUPERVISORY LIABILITY

The Plaintiffs also claim that Chief Harnett failed to properly supervise Ortiz. "Supervisory liability is a concept distinct from municipal liability, and is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates." *Odom*, 772 F. Supp. 2d at 403 (internal quotation marks omitted). "An individual cannot be held liable for damages under § 1983 merely because he held a high position of authority, but can be held liable if he was personally involved in the alleged deprivation." *Back v. Hastings on Hudson Union Free School District*, 365 F.3d

107, 127 (2d Cir. 2004) (internal quotation marks omitted).

"[A] supervisor may be found liable for his deliberate indifference to the rights of others by his failure to act on information indicating unconstitutional acts were occurring or for his gross negligence in failing to supervise his subordinates who commit such wrongful acts, provided that the plaintiff[s] can show an affirmative causal link between the supervisor's inaction and [their] injury." *Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002). In their complaint, the Plaintiffs allege in conclusory terms that Chief Harnett "exhibited deliberate indifference towards the constitutional rights of the plaintiffs" when he failed to act despite having knowledge that "policies, practices and customs of the City of Hartford" would, if they continued unabated, result in constitutional violations. (Complaint, Count Seven, ¶¶ 18-20.)

The Court concludes that the Plaintiffs have failed to make a sufficient showing that Chief Harnett was deliberately indifferent to the rights of others by his failure to act on information indicating that unconstitutional acts were occurring. There is no evidence that the constitutional violations alleged by the Plaintiffs resulted from Chief Harnett having knowledge of similar incidents and failing to act in response to such information. There is also no evidence to show that Chief Harnett fostered an environment in which such violations were condoned.

While the Plaintiffs have not presented evidence that Chief Harnett failed to act on information that unconstitutional acts were occurring, the Defendants have presented evidence that Chief Harnett did act on the complaint filed by Venghaus against Ortiz relative to the vandalizing of his vehicle. That complaint was investigated by the Internal Affairs Division of the Hartford Police Department. This action contradicts the Plaintiffs' allegations of deliberate indifference. Additionally, the City has provided evidence that investigations were conducted

relative to other complaints filed against Ortiz and that the City had taken disciplinary action against Ortiz. The Court concludes that the Plaintiffs have not established supervisory liability on the part of Chief Harnett and that he is entitled to summary judgment as to Count Seven of the complaint.

## C. STATE COMMON LAW CLAIMS

### 1. GOVERNMENTAL IMMUNITY

The Plaintiffs allege state common law claims of assault, intentional infliction of emotional distress, and negligent infliction of emotional distress against the Defendant Ortiz. The Defendants contend that Ortiz is entitled to summary judgment as to all of these claims on the basis of governmental immunity.

"Generally, a municipal employee is liable for the misperformance of ministerial acts, but has a qualified immunity in the performance of governmental acts. Governmental acts are performed wholly for the direct benefit of the public and are . . . discretionary in nature." *Spears v. Garcia*, 263 Conn. 22, 36 (2003) (citation omitted). "[T]he great weight of authority [holds] that the operation of a police department is a discretionary governmental function." *Gordon v. Bridgeport Housing Authority*, 208 Conn. 161, 179 (1988). "The immunity from liability for the performance of discretionary acts by a municipal employee is subject to three exceptions or circumstances under which liability may attach even though the act was discretionary: first, where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm; second, where a statute specifically provides for a cause of action against a municipality or municipal officer for failure to enforce certain laws; . . . and third, where the alleged acts involve malice, wantonness or intent to injure,

rather than negligence." *Evon v. Andrews*, 211 Conn. 501, 505 (1989) (citations omitted).

While the Court agrees that the actions of the Defendant Ortiz were discretionary in nature, the Court concludes that one of the recognized exceptions to the doctrine of governmental immunity might apply to the Plaintiffs' claims of assault and intentional infliction of emotional distress. The Plaintiffs' allegations that Ortiz lured them to an unfamiliar location where they were immediately surrounded by individuals demanding money for drugs, provided them with disturbing and false information about the whereabouts and activities of Sterling, and held a gun to Venghaus' head and pulled him out of his vehicle could establish "malice, wantonness or intent to injure, rather than negligence." *Id.* Consequently, summary judgment is not warranted as to the claims of assault and intentional infliction of emotional distress on the basis of governmental immunity. That exception would not apply, however, to the Plaintiffs' claim of negligent infliction of emotional distress. For that reason, the Defendants are entitled to summary judgment as to the claim of negligent infliction of emotional distress in Count Four of the complaint.

## 2. ASSAULT

The Plaintiffs' complaint alleges that "[t]he defendant officer, Nathaniel L. Ortiz, placed the plaintiffs, Michael Venghaus and Robert Emonds, in apprehension and fear of imminent, unpermitted and/or offensive touching of their persons." (Complaint, Count Three, ¶ 13.) The complaint goes on to allege that these "acts of the defendant officer, Nathaniel L. Ortiz, . . . constituted assault upon the plaintiffs . . . ." (*Id.* at ¶ 15.) "A civil assault is the intentional causing of imminent apprehension of harmful or offensive contact in another." *DeWitt v. John Hancock Mutual Life Insurance Co.*, 5 Conn. App. 590, 594 (1985) (citing 1 Restatement

(Second), Torts § 21).

Pursuant to Conn. Gen. Stat. § 53a-22 (b), a police officer "is justified in using physical force upon another person when and to the extent that he or she reasonably believes such to be necessary to: (1) Effect an arrest or prevent the escape from custody of a person whom he or she reasonably believes to have committed an offense, unless he or she knows that the arrest or custody is unauthorized; or (2) defend himself or herself or a third person from the use or imminent use of physical force while effecting or attempting to effect an arrest or while preventing or attempting to prevent an escape."

Viewed in the light most favorable to the Plaintiffs, the facts indicate that the Plaintiffs were lured to an unfamiliar part of town by the Defendant Ortiz under a deliberately false pretense. The Defendant Ortiz gave the Plaintiffs explicit directions to a destination. When the Plaintiffs arrived at that destination, several men surrounded their vehicle, repeatedly offered to sell them drugs, and ignored the Plaintiffs' repeated requests to bring Sterling out of the building. When Venghaus agreed to give one of the men money, guns were drawn and placed to the Plaintiffs' heads, and the Plaintiffs were forcibly pulled out of Venghaus' truck and then shoved against the truck. According to Venghaus, Ortiz "was the one who pulled the gun[,] . . . opened the door" and pulled him out of the truck. (Dkt. # 48-4, pp. 102,03.)  These facts do not suggest that the Plaintiffs were armed, potentially violent, or attempting to elude or resist arrest. Additionally, there is a legitimate dispute as to the pertinent events leading up to the arrests of the Plaintiffs and the objective reasonableness of those arrests remains unresolved. Because issues of material fact as to the parties' conduct at the time of the Plaintiffs arrests remain unresolved, the Defendants' motion for summary judgment is denied as to Count Three of the

complaint.

### 3. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In Count Four of their complaint, the Plaintiffs allege that Ortiz "exhibited intentional, extreme and outrageous conduct beyond all reasonable bounds of decency and was utterly intolerable in a civilized community . . . ." (Complaint, Count Four, ¶ 15.) To prevail on a claim of intentional infliction of emotional distress, a plaintiff must prove: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe . . . ." *Carrol v. Allstate Insurance Co.*, 262 Conn. 433, 443 (2003) (internal quotation marks omitted). A plaintiff claiming intentional infliction of emotional distress must not only allege each of the four elements, but must also allege facts sufficient to support those elements. *See Myers v. Bunker Ramo Corp.*, Civ. No. B-90-506 (JAC), 1992 U.S. Dist. LEXIS 5336, at *26 (D. Conn. Jan. 21, 1992).

"Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society. . . ." *Appleton v. Board of Education*, 254 Conn. 205, 210 (2000) (internal quotation marks omitted). "Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." *Id.* at 211(internal quotation marks omitted). "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. Only where reasonable minds disagree does it become an issue for the jury." *Menon v. Frinton*, 170 F. Supp.

2d 190, 198 (D. Conn. 2001) (citations omitted). The Court can assess "whether, as a matter of law, the alleged behavior fits the criteria required to establish a claim premised on intentional infliction of emotional distress." *Gagnon v. Housatonic Valley Tourism District Commission*, 92 Conn. App. 835, 847 (2006) (internal quotation marks omitted). Additionally, under Connecticut law, the fact that a plaintiff did not seek medical treatment does not preclude proof of severe emotional distress. *See Birdsall v. City of Hartford*, 249 F. Supp. 2d 163, 175 (D. Conn. 2003).

The Court concludes that a "reasonable fact finder could find [the behaviors of the Defendant Ortiz as alleged in the complaint] to be extreme or outrageous." *Gagnon*, 92 Conn. App. at 847. The complaint alleges that the Plaintiffs suffered emotional distress as a result of Ortiz luring them to an unfamiliar area where they were immediately surrounded by individuals demanding money for drugs, providing them disturbing and false information about the whereabouts and activities of Sterling, and, as to Venghaus, holding a gun to his head and pulling him out of his vehicle. These facts allege "[c]onduct on the part of the defendant that is [not] merely insulting or displays bad manners or results in hurt feelings . . . ." *Appleton*, 254 Conn. at 211 (internal quotation marks omitted). Because reasonable minds could disagree as to whether the alleged conduct was extreme or outrageous, the Defendants' motion for summary judgment is denied as to the claim for intentional infliction of emotional distress in Count Four.

### D. CONNECTICUT STATE CONSTITUTIONAL CLAIMS

The Plaintiffs allege that the Defendants violated their rights secured by Article 1, Sections 7, 8 and 9 of the Connecticut Constitution[3]. Both the Plaintiffs and the Defendants argue

---

[3]"The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures . . . ." Conn. Const. Art. 1, § 7.

"No person shall be arrested, detained or punished, except in cases clearly warranted by

-31-

that the claims under the Connecticut Constitution should be evaluated in the same manner as the claims under the U.S. Constitution.  In *Binette v. Sabo*, 244 Conn. 23 (1998), the Connecticut Supreme Court recognized a damages remedy under Article 1, Sections 7 and 9 of the Connecticut Constitution  for injuries arising from an unlawful search and seizure by police officers.

"Because the Connecticut Supreme Court fashioned the state judicial remedy with considerable reliance on the United States Supreme Court 's Bivens rationale . . . it stands to reason that the Connecticut Supreme Court would also follow federal precedent when determining the parameters of an unlawful arrest claim under the state constitution." *Birdsall*, 249 F. Supp. 2d at 172. Consistent with the reasoning expressed in *Birdsall,* the Defendants are entitled to summary judgment on the state constitutional claim that corresponds to the federal constitutional claim as to which summary judgment has been deemed appropriate, i.e., the unlawful search claim. Thus, the Defendants' motion for summary judgment on the claims brought under the Connecticut Constitution is granted as to Count Five and denied as to Count One of the complaint.[4]

---

law." Conn. Const. Art. 1, § 9.
    "The due process clause under article first, § 8, of the Connecticut constitution essentially mirrors the federal constitution and provides in relevant part: 'No person shall be . . . deprived of life, liberty or property without due process of law . . . .'" *Aselton v. Town of East Hartford*, 277 Conn. 120, 152 n. 14 (2006).

    [4]Count Two of the complaint also raised a due process claim based on Article 1, Section 8 of the Connecticut Constitution. The Plaintiffs have provided no authority in support of their due process claim under the state constitution. Indeed, because the Plaintiffs "make[] no argument in support of this claim at all," the Court considers this claim to be abandoned. *See Bronx Chrysler Plymouth, Inc. v. Chrysler Corp.*, 212 F. Supp. 2d 233, 249 (S.D.N.Y. 2002).

III. CONCLUSION

For the foregoing reasons, the Defendants' motion for summary judgment (**dkt. # 40**) is **GRANTED in part and DENIED in part**.

The Court GRANTS summary judgment in favor of the Defendant Patrick J. Harnett. All claims against the Defendant Patrick J. Harnett are hereby DISMISSED.

The Court further GRANTS summary judgment in favor of the City of Hartford. All claims against the City of Hartford are hereby DISMISSED.

The Court further GRANTS summary judgment in favor of the Defendant Nathaniel L. Ortiz as to the claims of unlawful search (Count Five), deprivation of due process (Count Two), and negligent infliction of emotional distress (Count Four).

The Court DENIES summary judgment on all remaining claims against the Defendant Nathaniel L. Ortiz.

This leaves the following claims against the Defendant Nathaniel L. Ortiz for trial: (1) false arrest pursuant to 42 U.S.C. § 1983 and the Connecticut Constitution (Count One); (2) malicious prosecution pursuant to 42 U.S.C. § 1983 and the Connecticut Constitution (Count One); (3) common law assault (Count Three); and (3) common law intentional infliction of emotional distress (Count Four).

SO ORDERED this 27th day of March, 2012

_____/s/ DJS_____
                    Dominic J. Squatrito
                    United States District Judge